**In re Ronald Lee HARKE, Debtor.**

**Sandra P. HARKE and David C. Drury, Plaintiffs,**

v.

**Ronald Lee HARKE, Defendant.**

**Bankruptcy No. 81–02546(2).
Adv. No. 81–0633(2).**

United States Bankruptcy Court, E.D. Missouri, E.D.

Sept. 22, 1982.

---

David C. Drury, St. Louis, Mo., for plaintiffs.

Cyril J. Clancy, Clayton, Mo., for debtor defendant.

### MEMORANDUM

ROBERT E. BRAUER, Bankruptcy Judge.

Pending for disposition before this Court is a Complaint to determine the dischargeability of certain debts owing by the Debtor Defendant to his former wife, and to her attorney, by virtue of the provisions of the decree which dissolved the marital union.

The marriage of Sandra P. Harke, Plaintiff, and Ronald L. Harke, Debtor Defendant, was dissolved in the Circuit Court of St. Louis County, Missouri, by decree of September 11, 1981. By this Decree of Dissolution, Ronald Harke is ordered to pay Plaintiff David C. Drury, Sandra Harke's attorney, the sum of $1,120.57 as and for attorney fees. The decree provides also that Sandra Harke have care, custody, and control of two minor children and that both parties waive maintenance. The decree incorporates by reference the parties' separation agreement, styled "Dissolution Stipulation and Agreement". In their separation agreement, Ronald Harke promised to make weekly child support payments, and both Sandra and Ronald Harke each promised to pay certain marital debts and agreed to indemnify and hold the other party harmless from payment of those debts.[1] Ronald Harke agreed to pay a majority of the outstanding marital debts, excluding the home mortgage loan. On November 2, 1981, less than two months following the entry of the Decree of Dissolution, Ronald Harke filed a Petition in Bankruptcy under Chapter 7 of Title 11, United States Code. He listed both his former wife, Sandra Harke, and her attorney, David Drury, as

---

1. Sandra Harke agreed to pay a Master Charge bill of approximately $850; a loan to Baden Bank of approximately $200 (the separation agreement recites that loan payments are $50.47 per month and that the loan should be paid in full by December); and one-half of a $1330 dental bill owing to one Dr. Gaston. Mrs. Harke also agreed to make the mortgage payments of $154.84 per month on the family residence.

Ronald Harke agreed to pay all other marital debts including $2500 to Laclede Gas Credit Union; $1400 to Baden Bank; $1700 to North County Landmark Bank; $900 to Amoco Oil; one-half of the $1330 dental bill to Dr. Gaston; $1500 to the parents of Sandra Harke; and an unspecified sum owing to Debtor's parents. (Plaintiffs' Exhibit 1).

unsecured creditors not entitled to priority.[2] Sandra Harke and David Drury subsequently filed this Complaint to determine dischargeability under 11 U.S.C. § 523(a)(5).

■ 11 U.S.C. § 523(a)(5)(B) excepts from discharge in bankruptcy any debt to a former spouse or child of the debtor for alimony, maintenance, or support of said spouse or child in connection with a separation agreement, divorce decree, or property settlement agreement, but only to the extent that such liability is actually in the nature of alimony, maintenance, or support. Any debt connected with a separation agreement, divorce decree, or property settlement agreement that simply divides the marital property is dischargeable in bankruptcy. In a decree of dissolution, an order to pay attorney fees and a promise to indemnify and hold harmless may fall into either category. *In re Coil,* 680 F.2d 1170 (7th Cir.1982); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 *reprinted in* [1978] U.S. Code Cong. & Ad.News 5963, 6320; S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5865. The issue, therefore, is whether, under the facts *sub judice,* this order to pay attorney fees and this promise to indemnify and hold harmless are in the nature of alimony, maintenance, and support, and thus nondischargeable in bankruptcy, or whether they are in the nature of a property settlement and therefore dischargeable.

The legislative history accompanying enactment of the Bankruptcy Code specifies that "what constitutes alimony, maintenance, or support will be determined under the bankruptcy laws, not State law." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 364 *reprinted in* [1978] U.S.Code Cong. & Ad. News 5963, 6320, S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 *reprinted in* [1978] U.S. Code Cong. & Ad.News 5787, 5865. However, the Bankruptcy Code does not contain either a definition of alimony, maintenance,

or support, or an enumeration of factors to be considered by the Court when making a dischargeability determination under this section of the Code. Consequently, a reading of the decisions construing § 523(a)(5) of the Bankruptcy Code (and its predecessor, Section 17a(7) of the Bankruptcy Act) reflects that Courts at all levels of the decision process are in general disagreement in respect of decretal and contractual requirements in the dischargeability context. ·

The bankruptcy courts have been able to agree that each set of facts must be examined independently, that a bankruptcy court is not bound by either the findings of a state court in a dissolution proceeding or by the language in a decree of dissolution. *Williams v. Gurley (In re Williams),* 3 B.R. 401, 6 B.C.D. 341, 343 (Bkrtcy.N.D.Ga.1980); *Monday v. Allen (In re Allen),* 4 B.R. 617, 6 B.C.D. 576, 577 (Bkrtcy.E.D.Tenn.1980); *In re Diers,* 7 B.R. 18, 6 B.C.D. 983, 984 (Bkrtcy.S.D.Ohio 1980). Although a bankruptcy court must look to the substance of an obligation rather than to labels imposed by state law, a bankruptcy court's determination "can but be flavored by the state law developments in judging whether 'liability is actually in the nature of alimony, maintenance, or support,' since all such domestic relations law is of state court origin." *In re Bell,* 5 B.R. 653, 6 B.C.D. 833, 834 (Bkrtcy. W.D.Okla.1980). As the Court stated in *Richter v. Pelikant (In re Pelikant),* 5 B.R. 404, 6 B.C.D. 758 (Bkrtcy.N.D.Ill.1980):

> While the legislative history indicates that the determination whether an award constitutes alimony shall be made with reference to a federal standard, nothing in the legislative history suggests that state law shall play no part in making that determination. *Id.* 5 B.R. 404, 6 B.C.D. at 759.

State statutory language and case law interpretation may also provide insight into

---

2. The Debtor also listed in his bankruptcy schedules as creditors: Laclede Gas Credit Union, Baden Bank of St. Louis, Landmark North County Bank, and Amoco Oil Company, marital debts owing to all of whom the Debtor promised to pay as part of his separation agreement. The Debtor did not list a Dr. Gaston in his bankruptcy schedules. It is not apparent whether either Mr. or Mrs. Harke's parents are scheduled as creditors.

the intent of a state court and the parties to a Decree of Dissolution in the negotiation, settlement, and approval process.

Under Missouri law, the authority of a state court to award attorney fees in a dissolution proceeding results from a statutory provision (Mo.Rev.Stat. § 452.355) which is independent and separate from the statutory provision authorizing an award of support (Mo.Rev.Stat. § 452.340), and from the statutory provision authorizing an award of maintenance (Mo.Rev.Stat. § 452.-335). This separate treatment of maintenance and child support as one type of award, and attorney fees and litigation costs as another type of award, demonstrates the Missouri Legislature's intent not necessarily to continue the authority to award attorney fees as a part of alimony, maintenance, or child support. *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. en banc 1979). *Dyche v. Dyche*, 570 S.W.2d 293 (Mo. en banc 1978). Missouri State Courts have treated hold harmless clauses in a similar manner. *Zubiena v. Zubiena*, 557 S.W.2d 58 (Mo.App.1977); *Henson v. Henson*, 366 S.W.2d 1 (Mo.App.1963). Under Missouri law, as under federal bankruptcy law, a State Court award of attorney fees and a promise to indemnify and hold harmless may or may not be in the nature of alimony, maintenance, or support. Therefore, a decretal provision ordering a Debtor to pay his ex-wife's attorney fees and his promise to indemnify and hold her harmless from the payment of certain marital debts may or may not constitute alimony, maintenance, or support for his ex-wife and children.

In determining the amount of a maintenance award, Missouri courts are directed to consider "all relevant factors," including "the financial resources of the party seeking maintenance including marital property apportioned to him, and his ability to meet his needs independently" and "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Mo.Rev.Stat. § 452.335. Similar considerations apply in the determination of a child support award. "All relevant factors" are to be examined including "the financial resources of the child" and of the custodial parent as well as "the financial resources and needs of the noncustodial parent." Mo. Rev.Stat. § 452.340. The relative financial resources of both parties as well as all other relevant factors are pertinent to a resolution of the federal question presented by this complaint.

■ I hold that the order in the Decree of Dissolution for the payment of attorney fees and the Debtor's promise to indemnify and hold harmless found in the separation agreement, incorporated into the Decree, are actually in the nature of alimony, maintenance, and support, and therefore not discharged by this Debtor's discharge in bankruptcy.

Sandra Harke testified that she waived maintenance in the dissolution proceeding because she believed she could manage her current living expenses, so long as Ronald Harke paid the specified marital debts and made weekly child support payments as required by the Decree of Dissolution. Mrs. Harke understood that by waiving maintenance, she was waiving the right to receive regular weekly payments for her support from her ex-husband. She stated that she would not have waived maintenance had she known that the Debtor was not going to pay those marital debts, as her income is not sufficient for her to pay current living expenses, supporting herself and her children, and also pay those marital obligations the Debtor promised to pay in the divorce action.

An examination of the parties' financial statements, prepared in 1981 in conjunction with the divorce proceeding, supports Mrs. Harke's analysis of her financial condition. On a gross income of approximately $9700 per year and with receipt of child support payments of $5720 per year, Mrs. Harke is able to support herself and her children with little remaining. Additional debt of approximately $8600 would severely strain an already tight budget. The Debtor's financial statement reflects annual gross income of approximately $22,000. His bank-

ruptcy petition reflects taxable income of $23,200 in 1979 and $30,900 in 1980.[3] Whatever the Debtor's precise income, it is substantially greater than Mrs. Harke's income. The marital agreement providing that the Debtor pay a majority of the outstanding marital obligations is not surprising in light of the disparity in the parties' earned income. The Debtor has the financial means necessary to satisfy his promise to hold Mrs. Harke harmless and also meet his own financial needs. The unequal division of marital debts appears to be an attempt to balance the relative incomes of the two parties. Mrs. Harke's testimony supports this finding, because, as she testified, in the absence of the order to pay attorney fees and the promise to indemnify and hold harmless, she would have needed some financial support. I find that the award of attorney fees and the Debtor's promise to indemnify and hold harmless are in lieu of other maintenance and support. They are actually in the nature of alimony, maintenance, and support and are not discharged by Ronald Harke's discharge in bankruptcy.

I wish to emphasize that Ronald Harke's obligation to pay his various other creditors, that is, those creditors in respect of whose debts he promised to pay and to indemnify and hold Mrs. Harke harmless, has been discharged by his discharge in bankruptcy. Only his obligation to Mrs. Harke and his children has not been discharged. Thus Ronald Harke is required to reimburse Mrs. Harke, or to indemnify and hold her harmless only to the extent that Mrs. Harke is actually required to repay those creditors. To the extent that Mrs. Harke does not repay those creditors, Ronald Harke is not required to reimburse Mrs. Harke.

---

**3.** In 1979, the Debtor earned $19,200 from his full-time job and $4000 from a long-standing part-time job. In 1980, he earned $24,900 at his full-time job and $6000 at his part-time job.