In re Bruce William
HOFFMAN, Debtor.

Donna Jean HOFFMAN, Plaintiff,

v.

Bruce William HOFFMAN, Defendant.

Bankruptcy No. 88–20205–DPM.
Adv. No. 88–2027.

United States Bankruptcy Court,
E.D. Missouri, N.D.

May 19, 1989.

Clifford H. Ahrens, Hannibal, Mo., for plaintiff.

Mark S. Wasinger, Hannibal, Mo., for defendant.

James S. Cole, St. Louis, Mo., Asst. U.S. Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

On October 13, 1988, the Plaintiff filed this Adversary Complaint seeking to deny discharge of a particular debt, pursuant to 11 U.S.C. § 523(a)(5). The Defendant filed his Answer on November 15, 1988; the case was tried to completion on January 25, 1989; and a final brief was filed on February 13, 1989.

### FACTUAL BACKGROUND

Donna Jean Hoffman, Plaintiff, and Bruce William Hoffman, Debtor/Defendant, were married on November 16, 1957. There were three children born of the marriage. The Hoffman's marriage was dissolved by Decree of the Circuit Court of Lewis County, Missouri on August 4, 1987. At that time there was only one unemancipated child. The parties had entered into a Stipulation and Separation Agreement ("Stipulation") on August 4, 1987, which the state court approved and found "to be not unconscionable". The Decree provided for child support and incorporated the Stipulation into and as part of the Decree as if fully set out verbatim.

The Stipulation specifically stated that it had been drafted by Mrs. Hoffman's attorneys and they had given no legal advice to Mr. Hoffman. It provided for the division of assets and the division or sharing of liabilities. The pertinent portions of the Stipulation are set forth as follows:

"NOW, THEREFORE, for valuable consideration, each received by the other and for the mutual promises herein, Husband and Wife agree as follows:

3. Wife shall receive all marital property in her possession including all items listed on Exhibit A attached hereto and made a part hereof excepting those listed on Exhibit B which is attached hereto and made a part hereof.

4. Husband shall receive all marital property in his possession and shall receive all items listed on Exhibit B attached hereto and made a part hereof.

5. Wife shall receive as her sole and separate property the real estate described on Exhibit C attached hereto and made a part hereof. Husband shall receive a lien against such property to secure the payment by Wife of $4,500.00 to ITT Financial Services as described in paragraph 11 herein. Upon such payment Husband agrees to give to Wife a Quit Claim Deed which Husband shall execute and which shall be held in escrow by Husband's attorney until the $4,500.00 is paid by the Wife. The parties agree that Wife shall pay all real estate taxes, insurance and maintenance thereon incurred following the date of this agreement. *Wife shall pay the first mortgage thereon to Palmyra State Bank and shall hold Husband harmless thereon.* (Emphasis added). Husband shall take no action which would cause his interest in said property to become encumbered or to cause any lien on mortgage to be recorded against said real estate. Husband agrees to make payments to ITT Financial Services as outlined in paragraph 11 herein in a timely manner and to perform all things necessary by him to prevent a foreclosure by ITT Financial Services on said Note. Wife shall receive sole possession of the property and will receive any and all rent or income therefrom.

6. Husband shall receive all of the parties' interest in the business known as Hoffman and Sons Construction. Husband shall receive all equipment listed on Exhibit D attached hereto and made a part hereof. Husband agrees to pay all business debt on which he and/or Wife is personally liable. Husband agrees to make any and all efforts to obtain the release of Wife from the said debts.

*Husband agrees to indemnify Wife and to hold Wife harmless of all such debts.* (Emphasis added). Husband shall receive all accounts receivable for such business and shall receive any bank account for such business.

7. From and after the date hereof each party will be liable for debts acquired by him or her. Husband and Wife shall split equally all debts listed on Exhibit E, Part A. *Husband shall pay all debts listed on Exhibit E, Part B and shall hold Wife harmless thereon. Wife shall pay all debts listed on Exhibit E, Part C, and shall hold Husband harmless thereon.* (Emphasis added).

9. *Both Husband and Wife agree to waive any claim for maintenance or alimony and both understand that by doing so, they cannot later claim alimony or maintenance.* (Emphasis added)

10. The parties agree that the Husband and Wife shall split evenly any property taxes on the marital residence incurred prior to the date of this agreement.

11. Husband agrees to pay the parties' debt to ITT Financial Services with the exception of $4,500.00 which Wife will pay directly to ITT Financial Services within two (2) years of the execution of this Agreement. Husband agrees to indemnify and hold the Wife harmless on the debt, with the exception of $4,500.00 for which *Wife will indemnify Husband and hold him harmless thereon.* (Emphasis added). Wife shall execute a Promissory Note to Husband in the amount of $4,500.00 payable two years from the date of this agreement ONLY if Wife has not previously made a payment of $4,500.00 directly to ITT Financial Services. If Wife has made such a payment to ITT Financial Services then said Promissory Note shall be marked paid in full by Husband and returned to Wife and shall be null and void. The Promissory Note and Wife's agreement to pay $4,500.00 to Husband shall be null and void in any event if Husband has defaulted on any provision of the parties' debt

to ITT Financial Services. Husband shall apply any and all monies received from Wife through this paragraph or from the Note to the parties' debt at ITT Financial Services."

Bruce is two years older than Donna and they were both in their late forties at the time of their dissolution of marriage. Their educational background was very similar. He had completed the 11th grade and she had completed the 10th grade, plus secretarial training at Culver Stockton College.

Donna Hoffman was employed by the Lewis County Ambulance District. Her Statement of Income and Expenses in the divorce case revealed an average monthly income of $872.98, plus approximately $1,000 annual sharecropping income. In addition, she was awarded $230.00 per month child support and Mr. Hoffman was ordered to maintain medical and dental insurance. The Statement of Income listed living expenses of $1,469.48 per month excluding the mortgage payments on the house in which she was living. Pursuant to their separation agreement, she received the residence and agreed to pay $3,000.00 per year to Palmyra State Bank on the first mortgage, which had a balance due of $43,280.00. He was to pay $1,500.00 per month to ITT Financial Services on the second mortgage, which had a balance due of $42,736.57 with a balloon payment of the entire balance due on October 25, 1987.

Bruce Hoffman was a self employed contractor operating Hoffman and Sons Construction. His Statement of Income and Expenses indicated approximate monthly income of $1,400.00 net and $1,516.66 gross, with monthly expenses of $1,806.64.

In August, 1987, during the same month as their divorce, Bruce defaulted in the payments to ITT Financial Services on the Promissory Note secured by the second mortgage on the residence awarded to Donna. On August 24, 1987, Donna's attorney notified the Debtor's attorney of the default and of their intention to seek sanctions.

When the balloon payment was due to ITT, Bruce was unable to make the pay-

ment. This particular note had been refinanced several times in the past. Since Bruce was unable to make the payments, ITT agreed to refinance the note at the reduced monthly payment of $805.00. The first monthly payment was due December 3, 1987. Bruce and Donna executed a new Promissory Note, Security Agreement, real estate Deed of Trust, an Affidavit and a Federal Disclosure Statement. When the Hoffmans signed the new note, the original note was marked paid in full and recorded.

Mr. Hoffman's December payment was timely but the next four payments between January 21, 1988 to May 31, 1988, were delinquent. He also defaulted on paying one-half of the real estate taxes on the marital residence.

Mrs. Hoffman finally filed her Motion for Contempt in Lewis County. The Circuit Court, on July 15, entered a Show Cause Order to Mr. Hoffman to appear on August 19, 1988 and show cause why he should not be held in contempt for failure to make loan payments, maintain dental insurance and pay real estate taxes as agreed in the Stipulation and ordered by the state Circuit Court. The day before the Contempt Hearing, Mr. Hoffman filed the present bankruptcy.

Loretta Bringer, ITT Financial Services Manager, testified that on April 13, prior to the Dissolution of Marriage, Mr. Hoffman came into the office and explained that they were getting a divorce. His wife wanted the real estate and if she received it, he would file bankruptcy. Several weeks after the divorce he returned to the ITT office. Bringer described him as visibly upset. He said he did not know what he would do but he may have to file bankruptcy. However, before he left he did make another payment on the house.

Bruce Hoffman acknowledged in his testimony that he told Bringer that if his wife obtained the real estate he would have to file bankruptcy. He indicated that his sole purpose of threatening to file bankruptcy was to induce ITT to lower the interest rates on their loan or forgive part of the principal.

Donna Hoffman stated that the Separation Agreement contained a waiver of maintenance because her husband had promised to make the house payments to ITT. She relied on that agreement and if she had known he would file bankruptcy, she would not have waived maintenance. Since the divorce, neither party has treated the payments made by Bruce Hoffman as alimony for tax purposes. Donna Hoffman did not declare the payments as income and Bruce did not deduct them as alimony.

DISCUSSION

The primary issue before this Court is whether or not the Stipulation And Separation Agreement incorporated in the August 4, 1987 Decree of Dissolution constitutes maintenance for or support of Donna Hoffman or her child as those terms are used in Section 523(a)(5)(B) of Title 11 of the United States Code, as amended:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support."

If, in fact, the Stipulation only represents a property settlement and not maintenance or support, then the financial obligations of Bruce Hoffman are dischargeable.

As previously indicated, the Stipulation unequivocally provides that "both Husband and Wife agree to waive any claim for maintenance or alimony and both under-

stand that by doing so, they cannot later claim alimony or maintenance." In her testimony before the Circuit Court of Lewis county, Mrs. Hoffman acknowledged she was waiving any claim for maintenance and that such waiver was forever. At the conclusion of her testimony the divorce court asked, "All right, Mrs. Hoffman, do you believe the agreement is fair and reasonable under all the circumstances to you?" She responded, "I think so, uh-huh."

It is well established in the Eighth Circuit that the crucial question in determining whether a debt is dischargeable, pursuant to 11 U.S.C. § 523(a)(5)(B) is what function was the Stipulation and/or Decree intended to serve. *In re Williams,* 703 F.2d 1055 (8th Cir.1983). The *Williams* court noted:

"Though we of course regard the decisions of the state courts with deference, bankruptcy courts are not bound by state laws that define an item as maintenance or property settlement, nor are they bound to accept a divorce decree's characterization of an award as maintenance or a property settlement."

This Court may find the debts non-dischargeable if the surrounding facts and circumstances would indicate that the settlement contained in the Stipulation and Decree was intended to function as maintenance and support. Courts have devised a list of factors to guide them in determining whether an award was intended as support or simply a property settlement. See *In re Neely,* 59 B.R. 189 (Bankr.D.S.D.1986).[1] Among other considerations, these factors weigh the disparity between the husband and wife as to their health, age, education, earning capacity, work skills and current employment. In the present case there is only minor differences between the Hoffmans as to health, age, education, earning capacity, work skills and current employment as of the date of the dissolution.

There is nothing in the state court record, decree or stipulation which would lead one to believe that the Judge intended

**1.** See *In re Coffman,* 52 B.R. 667, 674–75 (Bankr.D.Md.1985) wherein Judge Mannes reviewed over thirty decisions and then compiled a list of 18 factors as assisting courts in determining the parties' true intent at the time of the dissolution.

to award alimony or maintenance. He found the settlement Stipulation, which contained the waiver of maintenance, "to be not unconscionable" after Donna Hoffman had agreed in her testimony that the agreement was fair and reasonable under all the circumstances. A review of the Decree and Stipulation, which was drafted by Plaintiff's attorney, would lead any reader to believe the Judge had approved nothing more than a property settlement agreement. Even the Hoffmans treated the settlement and Stipulation as a property settlement in their tax returns.

The Plaintiff testified she only consented to the waiver of maintenance because her husband had agreed to give her the house, make various payments under the Stipulation (including $1,500.00 residence payment to ITT) and hold her harmless for his potential failure to make said payments. If he had not made those agreements, she asserts she would have needed and sought maintenance. Many cases support the position that a waiver of maintenance in return for the payment of debt is actually in the nature of alimony, maintenance and support and therefore nondischargeable, regardless of the language of the decree or settlement Stipulation. See, *In re Harke*, 24 B.R. 645, 648–49 (Bankr.E.D.Mo.1982); *In re Horton*, 69 B.R. 42 (Bankr.E.D.Mo. 1986); and *In re Soval*, 71 B.R. 690 (Bankr. E.D.Mo.1987). However, it is important to remember that in these cases the principals of *In re Williams* and *In re Coffman*, *supra*, are still controlling and must be applied. The crucial questions remain. What function was the Stipulation and Decree intended to serve? The fact that Mrs. Hoffman said she would have sought maintenance, but for the Stipulation agreement, does not mean the dissolution Court would have awarded her maintenance. A review of the parties' Income and Expense statement indicates their income was not sufficient to pay their debts and the Decree and Stipulation was simply an attempt to arrive at a fair property settlement. In fact, Mrs. Hoffman agreed to hold Mr. Hoffman harmless on her payments to Palmyra State Bank for the first mortgage, debts listed in Exhibit E of the Stipulation and

the $4,500 to ITT Financial Services. Under the circumstances such hold harmless agreements by the wife to the husband are in the nature of a property settlement.

Upon consideration of the Stipulation, Decree of the Circuit Court of Lewis County, testimony, argument of counsel, briefs and the factors set forth in *In re Coffman*, *supra*, I find that the function of the Decree and Stipulation was intended to serve as a settlement agreement. Accordingly, the Plaintiff, Bruce William Hoffman, is discharged of his debts, except for the $230.00 per month awarded as and for child support.

An Order consistent with this Memorandum Opinion shall be issued this date.