880 P.2d 1152

In re the Marriage of David Nathan STEINER, Petitioner–Appellant,

v.

Penny STEINER, Respondent–Appellee.

No. 1 CA–CV 92–0207.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 25, 1994.

Law Office of Irwin Harris, Ltd. by Irwin Harris, Phoenix, for petitioner-appellant.

David Nathan Steiner, in pro. per.

Combs & Associates, P.C. by Christopher A. Combs, Richard V. Mack, Phoenix, for respondent-appellee.

## OPINION

EHRLICH, Judge.

David Nathan Steiner ("husband") appeals from a post-decree judgment entered after a hearing on a petition filed by Penny Steiner ("wife") for an order to show cause for contempt. He raises the following issues:

1) Whether the trial court exceeded its jurisdiction to the extent it awarded judgment against the husband for child support and other expenses incurred by or on behalf of his daughter after she reached the age of majority and completed high school; and

2) whether the trial court erred in determining that the husband's obligation to pay the mortgage on the residence awarded to the wife was in the nature of spousal maintenance and therefore unaffected by the husband's discharge in bankruptcy.

We conclude that the trial court exceeded its jurisdiction in awarding the wife arrearages for child support and other expenses incurred after the parties' daughter became 18 years old and graduated from high school. We further determine that the trial court's implicit finding that the husband's obligation to pay the residential mortgage constituted spousal maintenance was based on incorrect legal principles and must be reconsidered by the court upon remand.

## FACTS AND PROCEDURAL HISTORY

The husband and wife were married in Toronto, Ontario, Canada in 1959; they later moved to the Phoenix area. The parties have three children, the youngest of whom, N., was born in October 1969. The wife left the husband in June 1982 and returned to Toronto. In March 1985, the two entered a separation agreement which, in relevant part: (1) awarded sole custody of N. to the wife; (2) required the husband to pay the wife $50 per month for support and maintenance; (3) required the husband to pay the wife $100 per month for support and maintenance of N. until, *inter alia,* she became 21 and ceased to be a full-time student, or completed her first degree or certificate of learning following her secondary schooling; (4) required the husband to pay expenses reasonably incurred for N.'s post-secondary education; (5) required the husband to pay half of the cost of any dental expenses incurred for N.; (6) required the husband to buy a car for N. when she attained age 16 and thereafter maintain insurance on it until she completed her education; and (7) required the husband to pay and discharge in full the existing first mortgage on the wife's Toronto residence, approximately $67,500, by July 1986.

The agreement also provided in pertinent part:

6. Material change in circumstances

(1) The provisions of maintenance and support set forth above for the benefit of the wife and [N.], have been agreed to by

the wife in reliance upon the current financial circumstances of the parties as represented by the husband, and which circumstances include the wife's current full-time employment by the Associated Hebrew Schools of Toronto, and upon her present and anticipated continued receipt of the income and benefits arising out of the division of assets in her favour set forth below.

(2) In the event of a material change in circumstances of either the husband or the wife, or both, such provisions may be varied at the instance of either party.

In April 1985, the husband filed a petition for dissolution of marriage. A decree of dissolution subsequently was entered incorporating the terms of the parties' separation agreement.

In October 1990, the wife filed a petition for order to show cause for contempt.[1] She alleged in relevant part that, in violation of the separation agreement, the husband had: (1) failed to make any spousal-maintenance or child-support payments; (2) failed to pay N.'s expenses of post-secondary education; (3) failed to contribute half of the dental expenses incurred on N.'s behalf; (4) failed to maintain automobile insurance for N.; and (5) failed to timely pay the mortgage on the residence. The wife asked that the husband be found in contempt of court and punished, and that she be awarded judgment for arrearages in spousal maintenance, child support, post-secondary education costs, dental expenses, automobile insurance costs and the first mortgage on the Toronto residence.

On March 8, 1991, the husband filed a Chapter 7 bankruptcy proceeding in the United States District Court. He received his discharge from the court on September 4 of that year.

A hearing on the wife's order to show cause was held on December 2, 1991. At the hearing, the wife reiterated her allegations of the husband's nonpayment. She further asserted that her payment of the Toronto mortgage constituted a change of circumstances justifying a monthly increase in spousal maintenance of $850. In response to the husband's argument that his mortgage, tuition and automobile insurance obligations had been discharged by the bankruptcy court, the wife contended that the car insurance and dental and school expenses were clearly in the form of child support and not dischargeable.

The trial court ruled in favor of the wife for $7736.60, representing combined child-support and spousal-maintenance arrearages as of December 31, 1991, $400 Canadian for the husband's share of N.'s dental expenses, $4747.92 Canadian for N.'s post-secondary education, $4200 Canadian for unpaid automobile insurance expenses, and $65,500 Canadian for the Toronto mortgage.[2] The court declined to hold the husband in contempt, order an increase in child support or spousal maintenance, or establish an arrearage-repayment schedule because the record was silent as to the husband's financial situation.

Regarding the husband's claim of discharge in bankruptcy, the trial court commented:

> [The husband's] position that inclusion of the mortgage debt in the Chapter 7 Bankruptcy operates as a termination of his obligation to [the wife] is without support. The Separation Agreement incorporated into the Decree, unambiguously states on Page 3, Paragraph 7(1), "The provisions of maintenance and support set forth above for the benefit of the wife ... have been agreed to by the wife in reliance upon the

1. In January 1990, the wife apparently applied to the trial court for entry of judgment pursuant to Arizona Revised Statutes Annotated section 12–2455(A). It appears that the court denied her request and directed her to file an order to show cause. In response to the wife's motion for reconsideration, which also was denied, the court noted that she did not comply with Arizona Rule of Civil Procedure 5(c)(2) in seeking enforcement of a judgment. In this decision, we do not consider the effect of section 12–2455 because the appeal was not brought from a judg-

ment pursuant to this statute and neither party raised this as an issue on appeal.

2. In her petition for an order to show cause, the wife stated that the previous month the husband provided her with a partial mortgage payment of $2000. This payment explains the discrepancy between the mortgage amount recorded in the separation agreement and the trial court's judgment for the Toronto mortgage.

current financial circumstances of the parties ... and upon her present and anticipated continued receipt of the income and benefits arising out of the division of assets in her favour set forth below." The Separation Agreement further provides on Page 4, Paragraph 7(2), "In consideration of the wife's entry into the Separation Agreement and in consideration of the mutual covenants herein contained, the husband covenants and agrees to pay and discharge in full the existing first mortgage ... and the husband shall fully indemnify the wife for all claims, costs, actions, demands and expenses, she may incur arising out of the default of husband hereunder."

The Court finds no ambiguity in the Separation Agreement. The parties clearly contemplated and set out their understanding, namely: that [the husband's] obligation to make the mortgage payments [was] spousal maintenance to be paid to a third-party payee (the mortgage holder) on behalf of [the wife]. Accordingly, the Court finds, as a matter of law, that the [husband's] mortgage payment obligation is spousal maintenance. [The husband] is not entitled to discharge his spousal maintenance obligation in bankruptcy.

The trial court initially awarded the wife her attorney's fees and costs, but later reversed and denied her application for fees. It entered judgment in accordance with its rulings and the husband timely appealed.

## DISCUSSION

### A. Post–Majority, Child–Support Arrearages

■ The husband contends that the trial court exceeded its subject-matter jurisdiction in awarding the wife judgment for arrearages for child support and other post-majority payment obligations imposed on him by the parties' separation agreement.[3] He argues that, because the wife pursued her remedy in the domestic relations venue by filing a peti-

tion for an order to show cause rather than initiating a separate contract action, we must reverse the trial court's decision regarding post-majority child support, including his daughter's dental expenses, car insurance and college tuition. For this proposition, he relies principally on language in *Solomon v. Findley* that a "contract for post-majority support should be enforced in a separate contract action." 167 Ariz. 409, 412, 808 P.2d 294, 297 (1991). We must agree.

In *Solomon*, a father's willingness to provide funds for the education of his child through college or until she reached the age of 25 years was incorporated with approval in the decree dissolving his marriage to the child's mother. The mother sought to enforce this provision through an order to show cause proceeding in the dissolution action. When the trial court denied relief because the child had reached the age of majority, the wife brought a separate action for breach of contract, which the trial court dismissed on the theory that the agreement had merged with the decree. Ultimately, the supreme court held:

> Although respectable authority allows a court to enforce an agreement for post-majority support by way of contempt in the divorce court, we believe that the better rule is the contract for post-majority support should be enforced in a separate contract action. We reach this conclusion because the divorce court only has jurisdiction to enforce child support provisions until the child reaches majority. Because the divorce court did not have authority to enforce the post-majority educational support provision, that portion of the contract did not merge into the dissolution decree, but rather retained its independent nature enforceable as a contract claim.

*Id.* at 411–12, 808 P.2d at 296–97 (footnote and citations omitted). Thus, notwithstanding the court's acknowledgment of a certain waste of resources, it concluded that, because the domestic-relations court is without jurisdiction to enforce provisions for post-majori-

---

**3.** The divorce decree was entered in April 1985; N. reached the age of majority in October 1987. Because the wife alleged in her petition for order to show cause that the husband had not paid *any* of his child-support obligations, her request concerned both pre-majority and post-majority child support. Although the trial court did not apportion its judgment accordingly, the husband only challenges the judgment to the extent that it awarded the wife post-majority child-support.

ty child-support, the agreement should be enforced independently in a contract action. *Cf. Anonymous Wife v. Anonymous Husband,* 153 Ariz. 573, 576 n. 3, 739 P.2d 794, 797 n. 3 (1987) (In case involving support of minor child, domestic-relations court has jurisdiction to adjudicate issues raised in cross-claim or counterclaim which are "strictly germane" in order to avoid "piecemeal litigation," "multiplicity of action and duplicity of costs.").

This court's decision in *Savage v. Thompson,* 22 Ariz.App. 59, 523 P.2d 110 (1974), cited by neither party, also supports the husband's contention. In that case, the trial court declined to hold the husband in contempt for failing to make certain post-majority child-support payments, but entered a judgment for child-support arrearages which included those amounts. This court determined that the trial court had exceeded its jurisdiction because "the remaining contractual rights, if any, can only be enforced like any other contractual rights, that is, by bringing a separate contract action, obtaining a judgment, and enforcing it as any other civil judgment." *Id.* at 62, 523 P.2d at 113. It further was stated that "a trial court has no continuing jurisdiction in a domestic relations action to enforce a contract requiring payments of support for a minor child if the sole basis for invoking such jurisdiction is a claim for support payments accruing after the child becomes eighteen." *Id.* at 63, 523 P.2d at 114.

In this case, the wife sought enforcement of the settlement agreement through the dissolution decree rather than by initiating a contract action. Accordingly, the trial court's judgment against the husband for post-majority child-support arrearages and other obligations is reversed.

### B. Bankruptcy Dischargeability of Obligation to Pay Mortgage

The husband next contends that the trial court erroneously determined that his obligation under the separation agreement to pay the Toronto mortgage was in the nature of spousal maintenance, a nondischargeable debt, and not a property division. He maintains that the court failed to consider his financial resources and whether his payment of the mortgage constituted an economic necessity for the wife, and also failed to require the wife to assume and carry the burden of proof on the dischargeability issue. In response, the wife points out that the court found that the parties' separation agreement disclosed a mutual intent that the husband's obligation to pay the Toronto mortgage was spousal maintenance to be paid to a third party on the wife's behalf. She contends that the husband failed to show that this finding was clearly erroneous or unsupported by credible evidence.

Division of property pursuant to a dissolution decree is treated as a debt dischargeable in bankruptcy. *In re Bedingfield,* 42 B.R. 641, 645 (Bankr.S.D.Ga.1983). However, 11 United States Code Annotated ("U.S.C.") section 523(a)(5) excepts from a bankrupt's discharge his debt

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree ... but not to the extent that—
>
> .     .     .     .     .
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

Dischargeability of a liability contained in a marital settlement agreement is a question of federal, not state law. *See, e.g., In re Yeates,* 807 F.2d 874, 877 (10th Cir. 1986). However, dischargeability under federal law may be contested in federal court or state court. *Jordan v. Jordan,* 166 Ariz. 408, 409, 803 P.2d 129, 130 (App.1990). It is generally recognized that the issue of dischargeability raises a question of fact, requiring inquiry beyond the document imposing the obligation. *E.g., In re Brown,* 74 B.R. 968, 971 (Bankr.D.Conn.1987); *In re Daviau,* 16 B.R. 421, 424 (Bankr.D.Mass.1982). The burden of proving that a debt falls within a statutory exception to discharge is on the party objecting to the dischargeability of a particular debt. *E.g., Tilley v. Jessee,* 789

F.2d 1074, 1077 (4th Cir.1986); *In re Haney,* 33 B.R. 6, 9 (Bankr.N.D.Ala.1983).

A number of decisions have discussed and diverged over the criteria for determining whether a marital-settlement liability is "actually in the nature of alimony, maintenance, or support." *See generally* Diane M. Allen, Annotation, *Debts for Alimony, Maintenance, and Support as Exceptions to Bankruptcy Discharge, Under § 523(a)(5) of Bankruptcy Code of 1978 (11 U.S.C. § 523(a)(5)),* 69 A.L.R.Fed. 403 (1984) ("Support Annot."). A minority view, represented in *In re Calhoun,* 715 F.2d 1103, 1109–10 (6th Cir.1983) (superseded by statute as stated in *In re Lewis,* 39 B.R. 842, 846 (Bankr. W.D.N.Y.1984), considers not only the intent of the parties and the divorce court at the time the liability at issue was assumed or imposed, but also any·changed circumstances of the debtor and his or her former spouse, and the former spouse's or child's support needs when the bankruptcy petition was filed. *See also In re Yeates,* 807 F.2d at 878 n. 3; *In re Brock,* 58 B.R. 797, 806–08 (Bankr.S.D.Ohio 1986); *Bedingfield,* 42 B.R. at 646–47; Support Annot. § 3 at 410–12, § 5 at 414–16.[4]

▆▆▆ The majority view is exemplified in *In re Gianakas,* 917 F.2d 759 (3rd Cir.1990). In that case, the divorce decree incorporated a settlement agreement pursuant to which the husband would pay the wife alimony, make child-support payments, convey the marital home to the wife, and assume and pay the second mortgage on the marital home. The court of appeals affirmed the district court's determination that the second mortgage was in the nature of alimony or support and was non-dischargeable, stating:

> We believe that whether an obligation is in the nature of alimony, maintenance or sup-port, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement. That intent can best be found by examining three principal indicators. The many other factors referred to by various courts are merely elements of these indicators.
>
> First, the court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary....
>
> [T]he second indicator to which we must look to assist in ascertaining the parties' intent is the parties' financial circumstances at the time of the settlement. The facts that one spouse had custody of minor children, was not employed, or was employed in a less remunerative position than the other spouse are aspects of the parties' financial circumstances at the time the obligation was fixed which shed light on the inquiry into the nature of the obligation as support.
>
> Third, the court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support.

*Id.* at 762–63 (citations omitted).

The court in *Gianakas* spurned the minority view represented by *Calhoun,* finding that it had been rejected by most of the courts which had considered it. *Id.* at 763. *See also Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir.1989); *Forsdick v. Turgeon,* 812 F.2d 801, 803 (2d Cir.1987); *Draper v. Draper,* 790 F.2d 52, 54 (8th Cir.1986); *In re Harrell,* 754 F.2d 902, 906–07 (11th Cir.1985);

---

**4.** The minority view entails inquiries such as the following:

> If the bankruptcy court finds the loan assumption too excessive to be fairly considered "in the nature of" support it must then set a reasonable limit on the nondischargeability of that obligation for purposes of bankruptcy. Use of factors similar to those a state court would employ to formulate a reasonable limit on support may be used to serve that limiting function in the context of a dischargeability determination. In such cases the bankruptcy courts should consider such traditional state law factors as the relative earning powers of the parties, their financial status, prior work experiences or abilities, other means of support and other facts relevant to the *substance of the result* achieved by the loan assumption in order to determine how much of the debt assumed can be fairly considered "in the nature of" support for purposes of federal bankruptcy. *Calhoun,* 715 F.2d at 1110 (emphasis in original; footnote omitted).

*In re Michaels,* 157 B.R. 190, 193–94 (Bankr. D.Mass.1993); *In re Pollock,* 150 B.R. 584, 589 (Bankr.M.D.Pa.1992); *see also In re Freyer,* 71 B.R. 912, 916, 918 (Bankr. S.D.N.Y.1987).

We similarly are persuaded that the majority is the better approach. By focusing on the parties' and the court's intent as to the character of the obligation sought to be discharged at the time it was created, the majority view not only adheres more faithfully to the federal statutory criterion that the liability be "actually in the nature of alimony, maintenance, or support," but also avoids transforming the dischargeability determination into a plenary reexamination and modification of the dissolution decree or settlement agreement.

■ Here, the trial court based its decision on the terms of the parties' separation agreement alone and failed to consider the existence of extrinsic factors that would also necessarily bear on the question of the intended character of the husband's mortgage obligation. As we observed earlier, the wife at the show-cause hearing argued for a contempt order and an increase in monthly spousal maintenance as the consequence of the husband's failure to pay. The husband maintained that the mortgage payment obligation had been discharged; he did not resist the entry of an arrearages judgment. Perhaps as a result of this focus, there was no development of the applicable federal criteria for dischargeability before the trial court.

The only testimony that bore on the parties' intent at the time of the settlement agreement was the husband's testimony that there were never any discussions prior to executing the agreement linking the amount of spousal maintenance to his duty to make the Toronto mortgage payments, and the wife's testimony that she was making $600 a month at the time of the divorce and would not have agreed to accept monthly spousal maintenance of $50 if the husband had not promised to pay the Toronto mortgage. Neither side, however, presented testimony as to whether the agreement's division of debts was crafted to balance disparate incomes or whether the parties' standard of living during their marriage or their relative financial circumstances when the separation agreement was executed were such that the maintenance award and the wife's other assets would actually have been inadequate to provide the wife and N. with necessities absent the husband's agreement to pay the mortgage. Accordingly, we find premature the trial court's conclusion that the wife's reliance on the parties' financial circumstances, and her continued receipt of the benefits of the separation agreement, sufficiently showed the intention of the parties that the husband's payment of the Toronto mortgage was to serve as spousal maintenance. That the wife would have sought additional maintenance were it not for the husband's promise to pay the Toronto mortgage does not establish that she would have been entitled to it under the circumstances as they existed at the time of the agreement. *See In re Hoffman,* 101 B.R. 578, 582 (Bankr.E.D.Mo. 1987). Here the trial court had no information on which to base any such conclusion.

The following discussion from *In re Osterberg* aptly describes the nature of the information to be considered in determining whether a particular payment obligation is "actually in the nature of support":

Of primary consideration is the intent of the parties or the divorce court in creating the obligation. That is, what function was the obligation or award intended to serve at the time? This determination is made by looking not at the language of the agreement but at its substance in light of surrounding circumstances. Various courts have endeavored to list those circumstances which are indicative of whether a particular obligation is a property division or nondischargeable support. This court has also commented upon those factors relevant to such a determination. From a review of its own decisions and those of other courts, the following are appropriate consideration[s]: (1) The age, health, educational level, skills, earning capacity and other resources of the respective parties; (2) Whether there were minor children involved; (3) Whether the obligation balances disparate incomes of the parties; (4) Whether there was a need for support at the time necessary to provide

for the daily needs of the recipient and any children; (5) Whether a support or maintenance obligation also exists; (6) Whether any other support award would be inadequate absent the obligation in question; (7) Whether one party relinquished a right to support under state law in exchange for the obligation; (8) Whether the obligation terminated upon death or remarriage of the recipient; (9) Whether the obligation extended over time or is in a lump sum; (10) How the obligation is characterized under state law; (11) Tax treatment of the obligation.

109 B.R. 938, 941–42 (Bankr.D.N.D.1990) (citations omitted).

Ordinarily, the lack of evidence to support a finding of nondischargeability of a debt would be counted conclusively against the judgment creditor. Here, however, the only relief the wife pursued at the show-cause hearing was a contempt sanction against the husband and an increase in spousal maintenance to compensate her for having paid the Toronto mortgage.[5] The proof she offered reflected this approach. We accordingly reverse that portion of the court's order awarding the wife $65,500 Canadian for her payment of the Toronto mortgage, and remand for further proceedings.

### C. Attorney's Fees

The wife requests an award of attorney's fees incurred in the trial court and on appeal. However, she did not cross-appeal from the trial court's denial of her application for attorney's fees; that portion of the judgment became final and we lack jurisdiction to alter it. As authority for her request for fees on appeal, the wife cites only Arizona Rule of Civil Appellate Procedure 21(c). Rule 21(c), however, merely provides the procedure for establishing the amount of an attorney's fees award otherwise authorized by law. As we have done in similar circumstances when no legal support for the application for fees is given, we deny the wife's request for an award of attorney's fees on appeal. *See City of Phoenix v. Phoenix Civil Service Board,* 169 Ariz. 256, 260, 818 P.2d 241, 245 (App.1991); *City of Phoenix v. Superior Court,* 144 Ariz. 172, 177, 696 P.2d 724, 729 (App.1985).

The trial court's decision is reversed in its entirety and remanded in part for proceedings consistent with this decision.

GERBER and GRANT, JJ., concur.

---

5. The wife's order-to-show-cause petition, filed well before the husband received his discharge in bankruptcy, sought "[j]udgment against [the husband] for all amount[s] due in reference to the first mortgage under paragraph 7(2) 'REAL AND PERSONAL PROPERTY', plus interest thereon...."